**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DELLA V. CAMERON,**

        **Plaintiff,**

**v.**                                 **Case No.  8:13-cv-2249-T-30TBM**

**CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff applied for Supplemental Security Income in December 2009, alleging disability as of October 1, 1998.  Disability reports indicated she suffers diabetes, high blood pressure, headaches, obesity, and neuropathy.  She also reported having bowel problems, having to use the bathroom six or seven times a day, and wearing pads in the anus area since November 2009.  Plaintiff's application was denied originally and on reconsideration.

Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing and testified in her own

behalf.  Plaintiff was fifty-four (54) years of age at the time of her administrative hearing in May 2011.  She stands 5' 4" tall and weighed 290 pounds, according to her administrative filings.  Plaintiff has an associates degree in social work and reported past relevant work as a social worker.

By her testimony, after working for several years as a social worker in a psychologist's office, she became a care giver to the psychologist who had multiple sclerosis.  She did this full-time, around the clock, until 2008.  She acknowledged previous work as a cashier and as a care giver for another person.  She receives medical care for diabetes, blood pressure, and neuropathy through a free clinic and treatment from Dr. Rao for incontinence.  She now takes insulin for her diabetes and medications for blood pressure and her heart.  She uses a walker because of her neuropathy in her legs and her back.  She cannot walk far before having to sit down; her back starts hurting and her legs go numb and give out.  Her incontinence also keeps her from working; without warning she can have a diarrhea attack.  The problem occurs six to seven times a day and she has to shower four to five times a day and change her clothes  She has lost weight – from about 350 pounds to 275 pounds.  The medication she receives from Dr. Rao helps a little.  Sometimes her hands go numb also.  She drops things constantly.  She has a small cataract, borderline glaucoma, and floaters which sometimes affect her vision.  Sleeping is becoming a problem.  All her problems cause her to be depressed.

She can stand, if holding on to something, for ten to fifteen minutes.  Most of the time she sits in a chair with rollers and uses her walker or a cane.  She can lift about five to ten pounds.  Her left rotator cuff is damaged.  She can pick things up but can't go too high.

She cannot climb ladders.  She does what she can around her residence; she cleans her clothes and washes her dishes, which takes her all day.  She uses a scooter at the grocery store.  A neighbor helps her carry in the heavy stuff.  She wears undergarment padding for her incontinence.  These do not fit well and she has to tape them up.  She carries clothes with her in case she has an attack of diarrhea.  (R. 73-102).

Anita Rothard, a vocational expert ("VE"), identified Plaintiff's past work and then testified on a hypothetical which assumed a person of Plaintiff's age, education, and work experience capable of light exertional work with limitations of occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no climbing ladders, scaffolds, ropes, or at open heights; limitation for overhead work with the upper extremities; and a limitation for not operating dangerous machinery.  With such limitations, such person could perform Plaintiff's past work as a cashier and as typist and receptionist.  If limited to sedentary work, such person could still perform the typist and receptionist work.  If such person would need to take unscheduled breaks to use the restroom six times a day for five to ten minutes, no work would be available. (R. 102-06).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed herein as necessary.

By his decision of July 26, 2011, the ALJ determined that while Plaintiff has severe impairments related to obesity, hypertension, and diabetes mellitus with diabetic neuropathy of the lower extremities, she nonetheless had the residual functional capacity to perform a limited range of light exertional work.  Upon this finding and the VE's testimony, the ALJ concluded that Plaintiff could perform her past work as a cashier, typist, and receptionist as

such was actually performed and as such is performed generally in the economy.  Upon this

conclusion, the Plaintiff was determined to be not disabled.  (R.56-66).  The Appeals Council

denied Plaintiff's request for review, and the ALJ's decision became the final decision of the

Commissioner.

B.

Entitlement to Supplemental Security Income payments requires the claimant

establish that he or she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C.

§ 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that

"results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at

§ 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  *See

id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th

Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and

demonstrate that she has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions.  *Moore

v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner and not the courts to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff raises seven claims on this appeal.  As stated by the Plaintiff, a remand and reversal is demanded with an immediate award of benefits because of the ALJ's: (1) failure to recognize all impairments and their severity; (2) giving improper weight to the medical evidence; (3) failure to utilize SSR 96-8p; (4) use of an incomplete hypothet (sic); (5) application of sit and squirm jurisprudence; (6) failure to properly utilize the Eleventh Circuit pain standard; and (7) failure to properly treat weight loss.  (Doc. 14).

In response, the Commissioner argues that the ALJ correctly recognized Plaintiff's severe impairments, including her gastrointestinal problems and incontinence and properly

5

discounted her subjective claims about the same on the basis that such claims were not supported by the record.  As for Plaintiff's claim that she should be considered unemployable based on the ALJ's comment that she would experience *occasional* weakness, headaches, and dizziness from her neuropathy, the Commissioner asserts that Plaintiff misconstrues the statement and the applicability of SSR 83-10.  Moreover, as the decision reflects, the ALJ specifically accommodated these symptoms in determining her RFC.  As for the medical opinions by Drs. Rao and Perez-Arce, such were properly considered and discounted by the ALJ.  With regard to SSR 96-8p in connection with the RFC assessment, contrary to Plaintiff's claim, the Commissioner points out that the decision reflects that the ALJ did cite to the ruling when addressing her RFC.  And, she again misreads the ALJ's findings concerning occasional dizziness and headaches.  As for the hypothetical question to the VE, the ALJ did accommodate her limitations to the extent shown by the record, thus there was no need to include additional limitations not supported by the record.  Nor did the ALJ engage in "sit and squirm" jurisprudence when he noted that Plaintiff did not need to use the restroom during the hearing.  While the ALJ did note this, such was just one of many reasons for finding that her testimony concerning her incontinence was not credible.  As for this Circuit's "pain standard," the decision reflects that the ALJ applied the same and properly considered her subjective complaints.  As for the ALJ's comments concerning her weight and the failure to follow doctor's advice and modify her lifestyle, such was properly considered in reaching the conclusion to discount her credibility.  Moreover, the Commissioner claims that the ALJ considered her obesity in fashioning her RFC and Plaintiff fails to identify additional limitations on her ability to work.  (Doc. 15).

6

This appeal rises or falls on the Plaintiff's first two claims and the ALJ's credibility findings as raised in her sixth claim.  By the first claim, Plaintiff argues there was no recognition of her gastroparesis with diarrhea or incontinence as a severe impairment.  By her account, the condition cited by Dr. Rao creates the need to frequently use the bathroom and such would have more than minimal affect on her ability to work.  Stated otherwise, the impairment is severe in contemplation of the Act.  In addition to Dr. Rao's diagnosis, the record reflects the finding in the Clearwater Free Clinic ("Free Clinic") records that Plaintiff's diarrhea was caused by her neuropathy and together the diagnoses were sufficient to require the finding that the condition was a severe impairment in contemplation of the Act and applicable regulations.

As a second part of this argument, Plaintiff notes that the ALJ did find that she suffers a severe impairment related to her diabetic neuropathy and further stated that she would experience *occasional* weakness, headaches, and dizziness based on such condition. Given that SSR 83-10 and SSR 83-12 define "occasional"as being from zero to one-third of the day, such limitation indicates that the condition is severe and leads to the conclusion that she is unemployable as not capable of a full days work five days a week.

As a third part of this argument, she urges that due to a combination of her neuropathy and obesity, she needs a cane, which is a separate nonexertional impairment.[1]

---

[1]Plaintiff argues: "Specifically, the ALJ found at page 58 that due to a combination of [her] diabetic neuropathy and obesity that the usage of a cane would clearly be necessary." (Doc. 14 at 4).  Actually, the ALJ made no such finding anywhere in the decision.  On the contrary, he concluded that the record did not support that a cane was medically necessary. (R. 63).

And, she urges that it is inconceivable that her combination of neuropathy, obesity, and incontinence would not cause fatigue that also would have more than minimal effect on her ability to work.

By her second claim, she complains that the ALJ erred in giving "no weight" to the opinion of Dr. Rao, a treating doctor, that she was medically disabled (R. 593). The finding that Dr. Rao was not versed in Social Security law is no basis for discounting his medical opinion. As for the ALJ giving only "moderate weight" to the opinion evidence from consulting examiner, Dr. Perez-Arce, that Plaintiff had leg weakness in her left leg and needed a cane (R. 323), she claims the ALJ should not have discounted that evidence because there was no objective testing.[2] Moreover, the ALJ erred in instead relying on the opinion evidence from Dr. Levine [for the RFC assessment], as his opinion, as nonexamining doctor, was entitled to little weight.

Finally, she complains there is no weight given to the opinions from unspecified doctors at the Free Clinic.

By the sixth claim, she urges that the ALJ made a vague finding that Plaintiff's subjective complaints satisfied "some" of the Eleventh Circuit's pain standard, which alone requires the case be remanded. Moreover, the Plaintiff's testimony was improperly refuted by reference/criticism of the medical evidence from Drs. Rao and Perez-Arce and the ALJ's substitution of his own opinion for that of the doctors.

---

[2]I note here that the record as to each doctor actually said is different than as argued.

8

After careful consideration of the ALJ's decision in light of the whole medical and other record, I find no error requiring remand on these claims.[3]  First, there is no error requiring remand for the failure of the ALJ to recognize gastroparesis as a severe condition at step two of the evaluation process.[4]  *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) (noting that ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two.").  Thus, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment: and that finding is all that step two requires."  *See Heatly v. Comm'r of Soc. Sec.,* 382 F. App'x. 823, 824-25 (11th Cir. 2010).  Here, the Plaintiff was credited with three severe impairments at this step.  (R. 58).  It is the purported symptoms of the condition and how such affect the claimant's RFC that are significant in the disability determination, not the mere

---

[3]As noted above, Plaintiff claimed disability since 1998.  The record contains no support at all for such an onset date.  Moreover, it appears that Plaintiff had a number of jobs subsequent to that date, some of which qualified as substantial gainful activity.  Plaintiff does not here challenge the ALJ's conclusion that she has not had substantial gainful activity since December 4, 2009, and this appears a fair point of reference for the claim.

[4]At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  In application, this inquiry is a "threshold" inquiry.  It allows only claims based on the slightest abnormality to be rejected.  *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984).  An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  *Id.*  A "[c]laimant need show only that her impairment is not so slight and its effect not so minimal."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

diagnosis.  Here, Plaintiff is simply incorrect insofar as she asserts the matter of her symptoms was not considered and addressed in connection with the ALJ's consideration of the medical opinions, his credibility finding and in assessing the Plaintiff's residual functional capacity. Given that Plaintiff fails to demonstrate from the medical record that the credibility finding and/or the RFC assessment by the ALJ are not supported by substantial evidence, despite the non-controlling opinions on disability, she is not entitled to relief on these three claims.

Regarding the subjective evidence, the decision reflects that the ALJ recognized the applicable regulatory standard and Plaintiff's claims of weakness, pain, instability, incontinence, and diarrhea, the need for a cane, headaches, fatigue, and insomnia.  (R. 60-62). Moreover, it is apparent that the ALJ credited the subjective claims but not to the extent claimed.[5]  While Plaintiff criticizes the conclusion that she suffered "some" of the alleged symptoms as vague, the statement is necessarily read in the context of the ALJ's review of the subjective complaints and the medical record.  In that light, the conclusion is adequately explained and the only real issue under the "pain standard" is whether the stated reasons for discounting her testimony are supported by substantial evidence.

_____

[5]In this Circuit, subjective complaints such as pain, fatigue, or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.  *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Proper application of the regulatory standard will satisfy this circuit's pain standard.  *See Wilson v. Barnhart,* 284 F.3d 1219, 1225-26 (11th Cir. 2002).

On that score, the decision reflects that the ALJ worked his way through the "myriad" of subjective complaints providing his rationale for why the complaints were overstated or unsupported on the record.  By her account, Plaintiff's predominant impairments are her diabetes mellitus and related neuropathy and weakness and her fecal incontinence caused by her diabetic neuropathy or her gastroparesis.[6]  In assessing the diabetes, the ALJ first addressed the treatment record and noted that there was no evidence from the treatment facilities at Morton Plant or the Free Clinic which gave specific insight into the effect of the condition on Plaintiff's functionality.  A thorough review of these treatment records confirms this finding.  Notes from these two treating facilities reflects numerous visits for diabetes and an assortment of other complaints, but treatment for the diabetes, the neuropathy and other conditions was conservative by way of medications.  Significantly, these records reflect little at all about Plaintiff's function.  While diarrhea and/or incontinence are noted on occasion in the Free Clinic notes, none of these notes reflect the condition that Plaintiff claimed at the hearing and again the condition was just monitored or addressed with medication.  In one note, Dr. Taunk notes that Plaintiff reported her fecal incontinenece was doing much better and he continued her on Metamucil and Imodium.  (R. 540).  According to Plaintiff, the

---

[6]The cause of her diarrhea and incontinence is unclear on this record.  Plaintiff testified that one of her doctors, Dr. Taunk, a treating gastroenterologist, told her the condition was caused by the diabetic neuropathy and this appears the view from the treatment records from the Free Clinic.  (*See e.g.* R. 492, 515).  Dr. Kavita Rao, who saw Plaintiff twice, appears to attribute the condition to gastroparesis, which she diagnosed.  Plaintiff's memorandum urges that gastroparesis is the cause, and she cites to *Stedman's Medical Dictionary,* 27th Ed., pages 733 and 888 to support her claim that the condition causes diarrhea.  Actually, the definitions there stated do not support that contention.  And, a review of other medical sources does not reveal that diarrhea is a common symptom of gastroparesis.  Regardless of the source, the impairment was addressed by the ALJ.

reason she saw Dr. Rao was to obtain medication for the diarrhea and as she testified the medicine Lomotil helped.  Significantly, the treatment notes do not contain a statement from any treating source concerning the affect of these conditions on Plaintiff's overall functionality nor are limitations or restrictions reflected therein, apart from advice regarding diet and exercise.  Moreover, as stated by the ALJ, Plaintiff had suffered from diabetes for many years and continued to work with the condition for many years.[7]  Records also support the finding that Plaintiff was advised to make lifestyle changes in diet and exercise due to diabetes and hypertension and her excessive weight.  (*See e.g.* R. 483).  While the ALJ's comment on this is criticized by the Plaintiff as inappropriate, the fact that she was told by her care givers to address her diet and to exercise is not an irrelevant consideration to the assessment of her credibility and the potential for improvement of her functional capabilities.  In sum, the ALJ concluded that the medical evidence does not support the type of limitations the claimant has alleged.  While Plaintiff criticizes that conclusion, she wholly fails to demonstrate from the record that the conclusion is unsupported by substantial evidence.

As for Plaintiff's claims of incontinence, fatigue, insomnia, and pain, and the purported need for a cane, the ALJ stated the following:

> First, the U.S. Administrative Law Judge considered the claimant's alleged incontinence and her alleged fatigue and insomnia. The claimant alleged incontinence beginning about a year ago. She testified at hearing that she loses control of her bowels about six to seven times per day, must carry around a change of clothes, and needs to shower about four to fives times per day to clean her private areas. Importantly, the claimant alleged disability as of 1998, yet the first mention of her

---

[7]The earliest notes I can find related to diabetes and lower leg pain date back to 2002. (*See* R. 445-448, 473).  By Plaintiff's own account she worked many jobs after that date.

incontinence anywhere within the record was not until twelve years after the alleged onset date. In fact, during the consultative examination in 2008, incontinence was not mentioned. At hearing, the claimant testified that her treating gastroenterologist, Dr. Taunk informed her that her incontinence is due to neuropathy. Records show the claimant received minimal treatment for her incontinence from Kavita Rao, M.D., totaling only two weeks. The claimant admitted that she needed to see Dr. Rao because the Clearwater Free Clinic would not provide her with medication for her incontinence because a standard dosage of the pills did not even require a prescription. The claimant testified that Dr. Rao was able to help her somewhat with her incontinence with a prescription for Lomotil. The claimant's allegations as to the frequency of her incontinence was not considered credible for multiple reasons. First, her statements could not be objectively verified within the medical evidence of record. Moreover, the claimant was able to sit during a 45-minute hearing and never requested to go to the bathroom once. Finally, there was no indication from any treating physician indicating that the claimant would require a specific range of unscheduled breaks during a workday that could assist the U. S. Administrative Law Judge in crafting an appropriate residual functional capacity (Exhibit 9F).

In all actuality, Dr. Rao' s opinion was quite conclusory and vague in this case and therefore was given no weight. Dr. Rao wrote in two reports that the claimant's condition was disabling and that the claimant was medically disabled. Both of these statements were given no credibility. First, the determination of disability is a determination as to the ultimate issue in any case and is therefore reserved for the Commissioner. Second, as a non-agency doctor, there is no indication that the doctor is versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act and Regulations. Finally, the doctor opinion was inconsistent with the other medical evidence within the record and the doctors own conservative pharmacological treatment (Exhibit 9F).

In addition, the U.S. Administrative Law Judge considered the afTects of the claimant's alleged back pain and lower extremity pain as they relate to the claimant's residual functional capacity. First, the claimant has alleged the need for an assistive device for ambulation. However, the claimant admitted at hearing that her cane and walker were both, self-prescribed. Moreover, the medical evidence of record does not include a prescription for such a device by any treating of examining physician. Likewise, although the claimant used a cane during the

examination by the consultative examiner in this case, there was no affirmative indication by the consultative examiner that the cane was in his opinion, medically required (Exhibit 3F). In addition, the findings of the consultative examiner 2008 were not as limiting as one would expect given the allegations of pain the claimant has alleged.

(R. 62-63).

Plaintiff urges that, given that both Dr. Rao and the Free Clinic gave the diagnosis for gastroparesis with incontinence,[8] such should automatically reflect a severe impairment and the conclusion of disabled. But Plaintiff offers no specific support from these records, apart from the diagnoses, that suggests the ALJ's conclusion on the limiting effects of the condition were near what Plaintiff claimed in her testimony. Similarly, as for the other symptoms claimed by Plaintiff, she offers no contrary record support for her claim of error. I have combed through every record and have found no indication apart from the conclusory opinions of disability that would demonstrate that the ALJ's reasons for discounting these subjective claims lacks support. Contrary to her argument, Dr. Perez-Arce did not opine that Plaintiff needed a cane, and she fails to show that the ALJ's actual conclusion about the need for a cane was in error.[9] In short, beyond unsupported arguments, there is no demonstration

---

[8]Plaintiff's Brief cites to the record at pages 596, 598, and 599 to support the claim that the Free Clinic made a similar diagnosis as Dr. Rao. But a review of those notes does not support the argument and, as noted above, the notes from the Free Clinic indicate the incontinence is caused by the neuropathy. They give no diagnosis for gastroparesis. In any event, it is not the diagnosis which is significant in these circumstances but the limiting effects of the diagnosed condition. Here, the Free Clinic records, even when they do note complaints of diarrhea and/or fecal incontinence, do not offer any support for the severity of the condition as claimed by Plaintiff nor any indication of the effect of the condition on functionality.

[9]It is here worth noting that two of the jobs identified by the VE were sedentary level jobs. When Plaintiff's representative was given the opportunity, he did not inquire what the

with reference to the medical record of error in these conclusions as such relates to incontinence or any of the other symptoms addressed.

Regarding the argument that the ALJ's comment "at page 65, that [Plaintiff] would experience '[o]ccasional weakness, headaches and dizziness based upon such neuropathy'" and that such would render the person unemployable, the argument misreads the decision. (Doc. 14 at 3).[10]  First, the actual comment by the ALJ was made in connection with his consideration of the evidence of Plaintiff's hypertension and atypical chest pain, not the diabetic neuropathy.  Thus, after reviewing the minimal medical record, the ALJ stated, "[t]he record does not support that her hypertension causes greater limitations than those imposed in the residual functional capacity listed above.  While she may experience occasional weakness headaches, or dizziness, the residual function accommodates for these symptoms by restricting her from only occasionally climbing ramps and stairs, and never climbing ropes, ladders, or scaffolds."  (R. 64-65).  By a plain reading of the conclusion, the first reference to "occasional" was not made with reference to the formal definition of the term under the cited rulings.  Moreover, the medical record on the hypertension and the chest pain, such as it was, was accurately reviewed by the ALJ.

Under the applicable standard, if the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision.  *Dyer*, 395 F.3d at

---

need to use a cane or the import of such a limitation on her expert opinion.

[10]Plaintiff couples this statement with the definition of "occasional" as set forth in SSR 83-10 and SSR 83-12, that is, "occurring from very little up to one-third of the time, " to conclude that the proper conclusion is that a person so limited up to one-third of the day would suffer a severe impairment and be unemployable.  (Doc. 14 at 3-4).

1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Such reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562 (citing *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986)). Here, even if I do not agree with every reason stated,[11] I am obliged to conclude that the ALJ has articulated specific and adequate record-based reasons for the conclusions and Plaintiff fails to show otherwise.

Regarding the second claim that the ALJ improperly discounted the opinions from Drs. Rao and Perez-Arce, I find no error requiring a remand. In this Circuit, certain rules apply to the consideration of the medical opinions of treating, examining, and nonexamining doctors. "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). A treating source's opinion that a claimant is unable to work, however, is not a "medical opinion" as defined by the regulations, but an opinion on an issue reserved to the Commissioner. 20

---

[11]I give little weight to the ALJ's comment that Plaintiff was able to sit for forty-five minutes at the hearing without asking to use the restroom. While I disagree that this comment suggests "sit and squirm" jurisprudence as such is defined by this Circuit's case law, I find the circumstance to reflect very little support to any conclusion by the ALJ. That said, given the whole of the ALJ's rationale, this is no cause for remand on these claims or under Plaintiff's fifth claim.

C.F.R. §§ 404.1527(e), 416.927(e).  When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  *Winschel* at 1178 (citing *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997)).  The opinion of an examining doctor typically is entitled to more weight than the opinion of a nonexamining doctor.  20 C.F.R. § 404.1527(d)(1); *Broughton v. Heckler,* 776 F.2d 960, 961-62 (11th Cir. 1985).  The reports of nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence on which to base an administrative decision.  *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987)).  However, an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources. *See Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

　　　　Under this standard, insofar as the ALJ gave "no weight" to the opinion of Dr. Rao that Plaintiff was medically disabled by reason of gastroparesis, there is no error requiring a remand.  As the ALJ noted, such opinion on disability is not a medical opinion but rather an administrative one left to the Commissioner.  This is true even if Dr. Rao is deemed to be a treating doctor.  Moreover, as the ALJ noted, the opinions on disability were conclusory and, by the ALJ's analysis, inconsistent with the other medical evidence and this doctor's own conservative pharmacological treatment.  The two notes from this doctor reflect no findings in support of the conclusion apart from the diagnosis for gastroparesis and simply appear to rely on Plaintiff's self-report of constant diarrhea.  (R. 586, 593).  Under the applicable standard, good cause for rejecting a treating source's opinion may be found where the treating source's

opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)).  Here, the finding challenged by the Plaintiff is the ALJ's statement that Dr. Rao was not versed in social security law.  Actually, the finding made by the ALJ was that "there is no indication that the doctor is versed in the assessment of functionality as it pertains to the disability provisions of the [Act] and Regulations."  (R. 63).  I think this fairly read to say that the doctor's point of reference for this opinion is unclear and thus not entitled to weight.  Even assuming this conclusion by the ALJ was improper, it is no cause for remand in light of the other bases offered by the ALJ for discounting the doctor's opinion, which simply are not refuted by the Plaintiff.

As for consulting examiner, Dr. Perez-Arce, he too opined that Plaintiff was unable to work given her "current condition."  (R. 320).  For similar reasons, there is no error in giving that opinion no weight.  The opinion from a consulting doctor is not entitled to any particular deference in any event.  Moreover, the opinion was discounted because it was vague, conclusory, and unsupported by the record as a whole.  The report itself leaves unclear the doctor's basis for the conclusion.  On physical examination, the doctor found Plaintiff with some low back pain and left leg weakness and some limitation in range of motion, which is fairly established by the record as a whole but such findings simply do not command the

conclusion that Plaintiff is disabled.[12]  Thus, I find the ALJ's reasons for not giving more than moderate weight to the evidence from this doctor supported by substantial evidence.

To the extent that Plaintiff urges that the ALJ failed to state the weight afforded the opinion evidence from the Free Clinic, she offers no citation to the record nor any support for this claim at all.  Counsel was well-advised by this Court's Scheduling Order that such unsupported, unarticulated claims are subject to denial.  Here, it is impossible to know just what evidence is the subject of the claim.  That said, a fair reading of the decision reflects that the ALJ considered the Free Clinic record and relied upon it for decision both as to the diabetes and incontinence findings.  This claim should be denied both for lack of articulation and supporting argument and lack of substance.

Finally, as a review of this record reveals, the only doctor offering a functional assessment was Dr. Levine, a nonexamining doctor.  While Plaintiff correctly notes that the opinions of such a doctor are generally entitled to little weight and may not be relied upon when inconsistent with the contrary opinion of a treating doctor, that is simply not what happened here.

Plaintiff's third claim is difficult to decipher.  Plaintiff begins by noting that the ALJ failed to mention SSR 96-8p in connection with his RFC finding and she urges "it is inconceivable how anyone could attempt to define [RFC] without specifically referring to the policy of SSA in that regard."  (Doc. 14 at 7).  Notably, Plaintiff thereafter fails to address the

---

[12]There is no reference to diarrhea in this report.

SSR.[13]  She next urges that Dr. Perez-Arce understood in looking at her problems, even without incontinence, she was disabled.  Moreover, the ALJ's conclusion of nondisability is nonsensical in light of the finding that Plaintiff would have occasional (up to one-third of the day) weakness, headaches, or dizziness.  And, thus Dr. Perez-Arce "makes sense when viewed from the standpoint of a proper usage of SSR 96-8p and the ALJ's own determinations as to the fact that Ms. Cameron would be so limited from the diabetic neuropathy." *Id.* at 8.

        As noted above, this comment by the ALJ is misread and mis-argued by the Plaintiff. The ALJ made no finding of such limitation in connection with his RFC assessment. Significantly, neither did Dr. Perez-Arce.  In any event, the ALJ did cite SSR 96-8p in describing his consideration at step four of the evaluation process.  In such circumstances, I am constrained to find that the ALJ applied the proper consideration to this issue.  In short, the failure to again cite the ruling is no cause for remand, nor is Plaintiff's restatement of the findings.

        By her fourth claim, Plaintiff argues the ALJ used an incomplete hypothet (sic) because he failed to include his limitation for the occasional (up to one-third of the day) weakness, headaches, and dizziness caused by her diabetic neuropathy.  In the absence of such limitation, the hypothetical question fails to comprehensively describe Plaintiff's impairments

---

        [13]The argument is poorly presented.  SSR 96-8p is the SSA's policy statement regarding the assessment of RFC in initial claims.  Although unclear, the Plaintiff appears to reference this ruling because it states that RFC is an individual's maximum remaining ability to do sustained work activities . . . on a regular and continuing basis, which means 8 hours a day, for 5 days a week.  *Id.* at * 2.

and a remand is in order.  Given the VE testimony on the import of needing to use the bathroom frequently, she urges the remand be for an award of benefits is in order.

In this Circuit, when employing a vocational expert, case law dictates that the ALJ pose hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999)). Where the hypothetical question posed to a VE does not comprehensively describe all of the claimant's impairments and limitations, the decision of the ALJ, based significantly on the VE's testimony, is unsupported by substantial evidence.  *Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Once again, I note that the ALJ did not find that Plaintiff suffers weakness, dizziness, and/or headaches up to one-third of the day.  Again, the finding was that "[w]hile she may experience occasional weakness, headaches, or dizziness, the residual function accommodates for these symptoms by restricting her from only occasionally climbing ramps and stairs, and never climbing ropes, ladders, or scaffolds.  Likewise, she should not operate dangerous machinery." (R. 65).  Under the applicable standard, the ALJ need not include a limitation which he has discounted or rejected as unsupported.  Plaintiff fails to accurately state the ALJ's finding and fails to demonstrate from the record a greater limitation than as assessed by the ALJ on account of these symptoms or her diabetes and/or her incontinence.

21

Finally, Plaintiff complains that the ALJ's statements about her weight are incorrect and improper and reflect that the ALJ was not following the law.  She urges that she has no insurance, no income, had to go to the Free Clinic, and that she tried to do the best she could about her obesity.  Here, the evidence of weight gain and the failure to address the same should not be used against her, she claims.

As the decision reflects, the comments about Plaintiff's weight were made in connection with the ALJ's consideration of her diabetic symptoms.  (R. 62).  In addition to noting the ups and downs of her weight, the ALJ noted the medical records which reflected advice that she undergo lifestyle changes by dieting and exercising and the fact that Plaintiff testified that she was not doing anything about her weight.  While all this may seem unfair, Plaintiff fails to show that the record was not accurately recited or that the ALJ's conclusions from this that her lack of follow-up on her doctors' advice perhaps indicated that her symptoms were not as severe as she claimed and that the fact that doctors had not limited her activities but instead had advised her to get exercise suggested that the doctors believed she was capable of performing such activities were improper.  By my consideration, these statements, offered in explanation why the ALJ chose to discount Plaintiff's subjective claims arising from her diabetes, were neither improper nor contrary to an applicable standard.  Plaintiff's obesity was a part of her claim of disability and thus a proper subject of discussion.[14]  Moreover these statements were only part of the reasons for the ALJ's conclusion that her diabetic condition did not render her disabled.

---

[14]The decision reflects that Plaintiff's obesity was separately addressed.  (R. 64). Plaintiff does not address those findings.

22

D.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further

recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close

the file.

Respectfully submitted this
2nd day of December 2014.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations

contained in this report within fourteen (14) days from the date of its service shall bar an

aggrieved party from attacking the factual findings on appeal and a *de novo* determination by

a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R.

Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of Record